IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WANDA D. MILLER (mother) and        :
WANDA D. MILLER (daughter),         :
                                    :       CIVIL ACTION NO. **1:CV-11-1451**
                                    :
            Plaintiffs              :       (Chief Judge Kane)
                                    :
      v.                            :       (Magistrate Judge Blewitt)
                                    :
                                    :
YORK COUNTY, PA, et al.,            :
                                    :
                                    :
            Defendants              :

## REPORT AND RECOMMENDATION

### I. Background.

On August 8, 2011, Plaintiffs, Wanda D. Miller ("Mrs.  Miller") and her daughter, Wanda

D. Miller ("Miss. Miller"), residents of  York County, Pennsylvania, filed, *pro se*, the instant civil

rights action pursuant to 42 U.S.C. § 1983, §1985 and §1988.  (Doc. 1).  Plaintiffs also raise state

law claims. Further, Plaintiffs filed an *In Forma Pauperis* Motion.  (Doc. 2).  This Court has

jurisdiction over this action based on 28 U.S.C. § 1331 and §1341(a).  Plaintiffs seek the Court to

exercise its supplemental jurisdiction over their state law claims under 28 U.S.C. §1367.

In their voluminous 49-page, 163-paragraph typed Complaint, Plaintiffs name the following

Defendants: County of York, Pennsylvania; Court of Common Pleas of York County, Pennsylvania;

Attorney Richard K. Konkel; York County Human Services Division ("YCHSD"); Beverly Mackereth,

Executive Director of YCHSD; York County Area Agency on Aging ("YCAAA"); Dianna Benaknin,

Director of YCAAA; Susan Gordon, Protective Service Supervisor, YCAAA; Courtney Andreuzzi,

Case Manager, YCAAA; Neighborhood Services of Lancaster, Inc. ("Neighborhood Services"); Colonial Manor Nursing & Rehabilitation ("Colonial Manor"); Phillip A. Veith, Landlord and Owner of Restless Oaks Trailer Park in Windsor, York County, Pennsylvania; and Lancaster Red Rose Credit Union ("Red Rose").  (Doc. 1, pp. 4-9).

## II.  Allegations of Complaint.

Plaintiffs raise a myriad of constitutional claims and state law claims beginning on August 6, 2009, when they allege Defendant YCAAA illegally entered their home, without permission, in Windsor, Pennsylvania, to remove Plaintiff Mrs. Miller and take her to the hospital for observation, and called an ambulance and the Lower Windsor Township Police.  (Doc. 1, pp. 10-11).  Plaintiffs allege that Plaintiff Mrs. Miller was forcibly removed from their home and taken to York Hospital and held there involuntarily for 25 days.  Plaintiffs aver that on August 26, 2009, Defendant YCAAA filed a Petition for Emergency Involuntary Provision of Protective Services under the PA Adult Protective Services Act, 35 P.S. §§ 10225.101, *et seq.*  Plaintiffs aver that Defendant YCAAA violated several provisions of this state law regarding its handling of Mrs. Miller.  (*Id.*, pp. 11-13).

Plaintiffs state that on August 27, 2009, Defendant YCAAA's Petition for Emergency Involuntary Provision of Protective Services was granted by Order of the York County Court , that Defendant Attorney Konkel was appointed as counsel for Mrs. Miller, and that Defendant Neighborhood Services was appointed as guardian *ad litem* for Mrs. Miller.  (*Id.*, p. 13).

Plaintiffs state that on August 31, 2009, a hearing was held, without giving them sufficient time to prepare and obtain counsel, on Defendant YCAAA's Petition for Emergency Involuntary Provision of Protective Services before the York County Court.  It appears that the Court temporarily

granted the Petition.  Plaintiffs aver the Court stated as follows:

> "At this point, we're going to put you [Plaintiff Mrs.  Miller]  into a
> nursing facility until we can get you some rehab, until your daughter can
> get her living arrangements straightened out, and then your attorney
> might be able to petition to get you released and get you back into
> your home."

(*Id.*, p. 15).

Plaintiffs state that at the August 31, 2009 hearing, neither the York County Court nor Defendant Attorney Konkel informed Mrs. Miller of her right to appeal the Court's decision to place Plaintiff Mrs. Miller in a nursing home, under state law, and that the Court did not try to correct this error until September 29, 2010.  (*Id.*, p. 14).

Pursuant to the Court's Order granting Defendant YCAAA's Petition for Emergency Involuntary Provision of Protective Services, Plaintiff Mrs. Miller was taken to Defendant Colonial Manor Nursing Home in early September 2009.  Plaintiffs aver that Mrs. Miller is still "confined to this day" at Defendant Colonial Manor Nursing Home.  (*Id.*).

On October 21, 2009, a second hearing on Defendant YCAAA's Petition for Emergency Involuntary Provision of Protective Services was held before the York County Court.  Plaintiffs' counsel, Attorney Bergdoll, requested a continuance to get an independent psychiatric exam of Mrs. Miller and to get an alternate guardian for her.  (*Id.*).

In November 2009, Plaintiffs aver that Defendant Veith, the owner of the trailer park in Windsor, Pennsylvania, where their trailer was located, commenced eviction proceedings against them without following due process or proper eviction procedures under the Pennsylvania Landlord Tenant Act. (*Id.*, p. 15).

On December 3, 2009, Plaintiffs aver that Attorney Bergdoll filed a Petition for Appointment of an alternative guardian and a Petition for an independent psychiatric examination in the York County Court.  (*Id*.).

Plaintiffs also aver as follows regarding the York County Court case:

> 49.     On December 4, 2009 the Court ordered the continuing Order of August 31, 2009; the reiteration that Neighborhood Services would be a temporary guardian for Mrs.  Miller for the purpose of ascertaining appropriate living arrangements which can range from where she is now to a lesser restrictive resource with probable assistance within her home.  Further, the Court ordered the property located in Lancaster County, Pennsylvania shall not be sold absent an Order from the Orphan's Court.

> 50.     Attorney Konkel along with Neighborhood Services tried to sell the Lancaster property in violation of the Court's Order dated August 31, 2009 and December 4, 2009 by seeking a real estate agent for that purpose.

> 51.     YCAAA's Petition and the Court's Order of August 27, 2009 stated that involuntary protective services should be the least restrictive and be short-termed.  *See* 6 Pa. Code § 15.71

> 52.     On January 21, 2010 Attorney Bergdoll on behalf of Mrs. Miller and Miss. Miller filed a Petition for Writ of Habeas Corpus averring that YCAAA and Neighborhood Services have failed and are refusing to carry forth the orders of the Court and duties under Older Adult Protective Services Act, 35 P.S. §§ 10225.101, *et seq.* owed to Mrs. Miller.

> 53.     On January 27, 2010 a hearing was held on the determination of Mrs. Miller's incapacitation and need for protective services.  The hearing was re-scheduled for March 30th and 31st, 2010 because Mrs. Miller was not returned to the courtroom by the nursing home or guardian.

> 54.     On March 31, 2010 the Court denied Mr. Bergdoll's demurrers in reference to Mrs.  Miller's capacity to make decisions for herself and for Miss. Miller continuing to act as Mrs. Miller's Power of Attorney.

(*Id.*, pp. 16-17).

In March 2010, Plaintiffs aver that Defendant Lancaster Red Rose Credit Union commenced, in Lancaster County Court, a mortgage foreclosure action against Mrs. Miller's house located at 2500 River Road, Washington Borough, in Lancaster County, Pennsylvania. Plaintiffs state the foreclosure was initiated in violation of their due process rights and rights under Pennsylvania law. (*Id.*, p. 17).

Plaintiffs allege that "on July 21, 2010[,] the Court issued a Decree and Opinion adjudicating Mrs. Miller as an incapacitated person as to her person and estate, appointing Neighborhood Services as a Plenary Guardian and revoking Miss. Miller's Power of Attorney." (*Id.*, p. 18).

Plaintiffs aver that Defendant YCAAA did not offer any services to Mrs. Miller except for confinement in a nursing home in contradiction to its mission statement.

Plaintiffs also state:

> 61.    Plaintiffs allege that the Older Adult Protective Services Act, 35 P.S. §§ 10225.101, *et seq.* and the Guardian Act, 20 P.A.C.S. §§ 5502 *et seq.*, is unconstitutional and fails to provide in its application constitutional and statutory, court procedures and funds adequate to protect the statutory and constitutional rights of Older Adults and Caretakers who are subject to the Act and violates the United States Constitution and the Constitution of the Commonwealth of Pennsylvania as to the right to due process, against search and seizure, as to privacy, expression, association, property, unlawful condemnation and taking, Life, Liberty and the Pursuit of Happiness as guaranteed by the Constitution.

(*Id.*, p. 19).

Plaintiffs aver that Defendant Colonial Manor failed to adhere to the Nursing Home Reform Act of 1987 and they specifically allege as follows:

> 64.    Mrs. Miller has been subjected to inhumane treatment at the hands of Colonial Manor. Mrs. Miller has been denied the basic right of hygiene and cleanliness. Mrs. Miller has been bedridden since her arrival

in early September, 2009 except for six (6) excursions to the courthouse. Mrs. Miller can be ambulatory with assistance from a wheelchair, however, Colonial Manor has made no effort to accommodate Mrs. Miller's social needs.  Colonial Manor has unjustly and without a court order restricted her daughter's visitation and she has not been able to communicate freely with her daughter.

(*Id.*, p. 20).

Additionally, Plaintiffs state:

67.    Plaintiffs allege the County, with knowledge of this action, acquiesced and acted jointly with the YCHSD and YCAAA compounding the injuries sustained and continue to be sustained by the Plaintiffs.

68.    Plaintiffs allege the YCAAA instigated and conducted through the District Attorney's Office, York County, without justification or probable cause a criminal investigation of Mrs. Miller and Miss. Miller and their relationship to intimidate and silence t hem, and threatened Miss. Miller with criminal prosecution.

(*Id.*, p. 21).

Plaintiffs conclude their allegations as follows:

69.    Plaintiffs allege Attorney Konkel, the court appointed attorney, has not represented Mrs. Miller's clearly expressed interests throughout this proceeding.  Attorney Konkel, in association with YCAAA, Miss. Benaknin, Miss. Gordon, Miss. Andreuzzi and Neighborhood Services, in acting under color of law did knowingly and intentionally violate Mrs. Miller's constitutional and statutory rights under the United States Constitution and the Constitution of the Commonwealth of Pennsylvania.

70.    Plaintiffs allege YCAAA has failed to act in a reasonable manner and their conduct was willful, malicious and negligent.  Further, YCAAA has failed to perform its statutory duty to follow the Rules, Statutes, Code and Laws of the Commonwealth of Pennsylvania.  YCAAA, in association with UCSD, Neighborhood Services and Attorney Konkel have jointly and/or severally participated in an enterprise to deprive Mrs. and Miss. Miller their constitutional and statutory rights under the United States Constitution and the Constitution of the Commonwealth of Pennsylvania and the laws of Pennsylvania.

71.     Plaintiffs allege the policies and procedures promulgated by the Attorney General, the County, YCHSD and YCAAA have resulted in violations of Plaintiffs' and others similarly situated constitutional and statutory rights under the United States Constitution and the laws and statutes of Pennsylvania.

72.     Plaintiffs allege YCHSD and Miss. Mackereth, in association with YCAAA, Miss. Benaknin, Miss. Gordon, Miss. Andreuzzi, Attorney Konkel, and Neighborhood Services, acting under color of law, participated in violating Mrs. Miller's rights, by acting as person in charge, having knowledge of and personally directing her subordinates on the policies and procedures to be followed when implementing the provisions of Pennsylvania's Older Adults Protective Services Act and Guardianship Act.

73.     Plaintiffs allege YCAAA and Miss. Benaknin, in association with Attorney Konkel, Colonial Manor, and Neighborhood Services, acting under color of law participated in violating Mrs. Miller's rights, by acting as a person in charge, having knowledge of and personally directing her subordinates on the policies and procedures to be followed when implementing the provisions of Pennsylvania's Older Adult Protective Services Act and Guardianship Act.

74.     Plaintiffs allege YCAAA and Miss. Gordon, in association with Attorney Konkel, Colonial Manor, and Neighborhood Services, acting under color of law participated in violating Mrs. Miller's rights, by acting as a person in charge, having knowledge of and personally directing her subordinates on the policies and procedures to be followed when implementing the provisions of Pennsylvania's Older Adults Protective Services Act and Guardianship Act.

75.     Plaintiffs allege, Miss. Andreuzzi, in association with Attorney Konkel, Colonial Manor, and Neighborhood Services, in acting under color of law did knowingly and intentionally violated (sic) Mrs. Miller and Miss. Miller's constitutional and statutory rights under the United States Constitution and the laws and statutes of Pennsylvania.

76.     Plaintiffs allege Defendants The County, YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose Credit Union, Miss. Mackereth, Miss. Benaknin, Miss Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Richard Konkel have acted in concert with one another in

> a joint enterprise to violated (sic) Plaintiffs' and other similarly situated constitutional and statutory rights under the United States Constitution and the laws and statutes of Pennsylvania.

(*Id.*, pp. 22-24).

Plaintiffs raise nine Counts against Defendants.  In Count I, Plaintiff Mrs. Miller asserts constitutional claims under §1983 for violations of the First, Fourth, Fifth, Sixth and Fourteenth Amendments, including deprivation of her liberty and property without due process, violation of her right to free speech and expression, violation of her right to be free from excessive force, unlawful search and seizure, and false imprisonment.  Defendants named in Count I are YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss. Mackereth, Miss. Benaknin, Miss. Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Konkel.  (*Id.*, pp. 27-28).

In Count II, Plaintiff Miss. Miller asserts constitutional claims under §1983 for violations of the First, Fourth, Fifth and Fourteenth Amendments, including violation of her right to free speech and expression, unlawful search and seizure, and violation of due process rights.  Defendants named in Count II are YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss. Mackereth, Miss. Benaknin, Miss. Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Konkel. (*Id.*, pp. 28-29).

In Count III, Plaintiffs assert constitutional claims under §1985 against Defendants, namely, York County, YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss Mackereth, Miss. Benaknin, Miss Gordon, Miss. Andreuzzi, Mr. Veith, and Attorney Richard Konkel.  (*Id.*, pp. 29-30). Plaintiffs aver that Defendants acted in concert to violate their constitutional rights.

In Count IV, Plaintiffs seek Declaratory and Injunctive Relief, pursuant to 28 U.S.C. § 2201 and § 2202, against Defendants Court of Common Pleas, York County, YCHSD, YCAAA, Colonial Manor, and Mr. Konkel.  Plaintiffs allege as follows:

> 108.    Defendants are now, and at all times mentioned in this Complaint have been adversaries to Mrs. and Miss. Miller best interests and have impeded Attorney Bergdoll from representing Mrs. Miller who is her choice of counsel and Mrs. Hill-Grison, a highly qualified guardian from representing Mrs. Miller's personal and real estate.

> 109.    On or about August 6, 2009, and continuing to the present, Defendants have systematically denied, refused and ignored Mrs. Miller's wishes to have Attorney Bergdoll represent her in violation of her constitutional rights and the laws, statutes and code of the Commonwealth of Pennsylvania.

> 110.    On or about August 6, 2009, and continuing to the present, Defendants have systematically denied, refused and ignored Mrs. Miller's wishes to have Neighborhood Services removed and replaced as her guardian in violation of her constitutional rights and the laws, statutes and code of the Commonwealth of Pennsylvania.

> 111.    When Mrs. Miller through Attorney Bergdoll attempted to save her house and property in a Chapter 13 Bankruptcy action, Attorney Konkel and Neighborhood Services intervened and used the action to sell her home and liquidate her assets leaving Mrs. Miller without assets and resources contrary to the Court's Order of August 31, 2009 and December 4, 2009.

> 112.    Throughout these proceedings Attorney Bergdoll has demanded that Mrs. and Miss. Miller's wishes to be heard and acted upon.

> 113.    As a result of the Defendants['] acts, Plaintiffs have sustained great and irreparable injuries to their reputation, humiliation and embarrassment, financial losses to real and personal property, financial losses of effort and work to aid in the defense of Mrs. and Miss. Miller, trespass into their real and personal property, loss of liberty and violations to their constitutional rights.

(*Id.*, pp. 32-33).

In Count V, Plaintiffs raise substantive due process claims under the Fourteenth Amendment against Defendants York County, YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss. Mackereth, Miss. Benaknin, Miss Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Richard Konkel.

In Count VI, Plaintiffs raise procedural due process claims under the Fourteenth Amendment against Defendants York County, YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss. Mackereth, Miss. Benaknin, Miss Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Richard Konkel.

In Count VII, Plaintiffs raise claims under *Monell*[1] against Defendants York County, YCHSD and YCAAA.  (*Id.*, pp. 38-41).

In Count VIII, Plaintiffs raise numerous state law claims, including negligence, assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, trespass, and conversion, against Defendants York County, YCHSD, YCAAA, Neighborhood Services, Colonial Manor, Red Rose, Miss. Mackereth, Miss. Benaknin, Miss Gordon, Miss. Andreuzzi, Mr. Keith, and Attorney Richard Konkel.

In their final claim, Count IX, Plaintiffs raise a conspiracy claim, seemingly under §1983, against Defendants York County, YCHSD, YCAAA, Miss. Mackereth, Miss. Benaknin, Miss. Gordon and Miss. Andreuzzi, Mr. Keith, Neighborhood Services, Colonial Manor, Red Rose, and Attorney Konkel.

---

[1]*Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978).

As relief, Plaintiffs request injunctive and declaratory relief as well as compensatory and punitive damages. (*Id.*, p. 46-47).[2]  As part of their injunctive relief requested, Plaintiffs essentially seek this Court to undo the York County Court's decisions regarding the involuntary commitment of Mrs. Miller and "to allow Mrs. Miller to be released from Colonial Manor." (*Id.*, p. 46).  This requested relief, as discussed below, would require this Court to declare the decisions of the York County Court to remove Mrs. Miller from the care of Miss. Miller and to commit Mrs. Miller at Colonial Manor null and void, and would effectively overrule the York County Court's judgments. The York County Court decisions regarding the involuntary commitment of Mrs. Miller and the decisions regarding her care would have to be rejected and overruled for Plaintiffs to prevail on this requested relief.

## III.  Motion for Stay.

On October 7, 2011, Plaintiff Miss. Miller filed a Motion for Stay Pending Appeal and a cover letter addressed to the undersigned.  (**Docs. 6 and 7**).  Plaintiff Miss. Miller requests this Court to Stay two recent Orders issued by the Bankruptcy Court with respect to her Bankruptcy case she

---

[2]To the extent Plaintiffs sue the state actor Defendants in both their individual and official capacities, they cannot obtain money damages, both compensatory and punitive damages, against them in their official capacities.

Initially, we find that any claims which Plaintiffs assert against the state actor Defendants in their official capacities are barred by the Eleventh Amendment immunity.   Plaintiffs have sued Defendants Mackereth, Benaknin, Gordon, and Andreuzzi in both their individual and official capacities. (Doc. 1, p. 1).  Insofar as Plaintiff is suing state actor Defendants in both their individual and official capacities, they can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential); *Dougherty v. Snyder*, 2011 WL 1871226, *12 (M.D. Pa. 5-16-11); *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 695-696 (W.D. Pa. 2009); *Dougherty v. Snyder*, 2011 WL 1871226 (M.D. Pa.).

filed under Chapter 7 on June 8, 2011.[3]  Specifically, Plaintiff Miss. Miller requests this Court to stay the September 13, 2011 Order of the Bankruptcy Court granting a creditor's (Defendant Phillip Veith's) Motion for Relief from the Automatic Stay, and for this Court to stay the September 27, 2011 Order of the Bankruptcy Court denying her Motion for Stay of the September 13, 2011 Order of the Bankruptcy Court.[4]   (Doc. 6).   The Motion for Relief from the Automatic Stay filed by Defendant Veith in Plaintiff Miss. Miller's bankruptcy case seemingly pertained to an eviction action Veith filed against Plaintiff Miss. Miller and her mobile home located at 120 Oak Leaf Drive, Windsor, York County, Pennsylvania, which was an asset in her bankruptcy estate.   Plaintiff Miss. Miller also states that the mobile home is her residence and that it is located on the real property owned by Defendant Veith.   Further, Plaintiff Miss. Miller alleges that if the Bankruptcy Court's September 13, 2011 Order permitting Defendant Veith to evict her from his real property is not stayed by the District Court in her instant Civil No. 11-1451 case, she will be left without a remedy since her appeal and the constitutional issues she raises in her Civil No. 11-1451 case will become moot, and she will suffer irreparable harm.   (Doc. 6, pp. 3-4).   Additionally, Plaintiff Miss. Miller alleges that she claimed her mobile home as an exemption in her bankruptcy case and if the District Court does not stay the Bankruptcy Court's Order permitting Defendant Veith to evict her, her right to equal protection will be violated.   Plaintiff Miss. Miller concludes that her present Motion for a Stay (Doc. 6) should be granted since she believes she will be successful with respect to her Civil No. 11-1451 case.

---

[3]The Chapter 7 Bankruptcy case Plaintiff Miss. Miller filed is docketed as case number 1:11-bk-04155-MDF, M.D. Pa.

[4]See Docs. 44 and 62 in bankruptcy case 11-04155.

In her cover letter submitted with her Motion for a Stay (Doc. 7), Plaintiff Miss. Miller states that in her Civil No. 11-1451 case she is, in part, "asking for injunctive relief to avoid being evicted from [her] home."[5]

As discussed below, we find that Plaintiffs' constitutional claims in their Complaint, Civil No. 11-1451, are barred by the *Rooker-Feldman* doctrine.[6] We find that Plaintiffs have no likelihood of success of any of their claims in the instant case, Civil No. 11-1451, and that Plaintiff Miss. Miller has other remedies available to her to appeal the Bankruptcy Court's September 13, 2011 Order granting Defendant Veith relief from the automatic stay to evict her. *See In re Myers*, 491 F.3d 120 (3d Cir. 2007)(debtor could appeal to District Court order of Bankruptcy Court which dismissed her bankruptcy case and effectively granted creditor relief from automatic stay, and debtor could then appeal decision of District Court to Circuit Court of Appeals); *In re Coletta*, 336 Fed.Appx. 202 (3d Cir. 2009)(the District Court acts as an appellate court in reviewing the final order of the Bankruptcy Court in annulling the automatic stay). Further, "[t]he District Court ha[s] jurisdiction to review the Bankruptcy Court's orders under 28 U.S.C. §158(a)." *In re Anthanassious*, 418 Fed.Appx. 91, 94,

---

[5]In their Complaint filed in the instant case, Civil No. 11-1451, Plaintiffs state that Defendant Phillip Veith is the owner of the trailer park in York County where Plaintiff Miss. Miller's mobile home is located. Plaintiffs allege that in November 2009, Defendant Veith initiated eviction proceedings against Miss. Miller without due process and without following proper Pennsylvania Landlord Tenant law. (Doc. 1, p. 15). Thus, we construe the "Respondent," whose Motion for Relief from the Automatic Stay was granted by the Bankruptcy Court, referred to in Plaintiff Miss. Miller's Doc. 6 Motion for a Stay to be Defendant Phillip Veith. Also, Plaintiff Miss. Miller's Bankruptcy Court docket sheet reveals that Defendant Veith's Motion for Relief from Automatic Stay was granted on September 13, 2011.

[6]The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

n. 2 (3d Cir. 2011).  Additionally, pursuant to 28 U.S.C. §158(d), Courts of Appeals have jurisdiction over appeals from final decisions of the District Court reviewing a Bankruptcy Court decision under 28 U.S.C. §158(a).  *In re Anthanassious*, 418 Fed.Appx. at 94 (citation omitted).  Moreover, Plaintiff Miss. Miller sought a stay with respect to the September 13, 2011 Order of the Bankruptcy Court permitting Defendant Veith to evict her under Fed.R.Bankr.P. 8017, and the Bankruptcy Court denied it on September 27, 2011.  After filing a proper appeal of the Bankruptcy Court's September 13, 2011 Order pursuant to 28 U.S.C. § 158(a), Plaintiff can again seek a stay.  Plaintiff's attempt to seek a stay in the present case, 11-1451, is not appropriate.  *See In re Anthanassious*, 418 Fed.Appx. at 94.

The Court in *McLafferty v. Deutsche Lufthansa A.G.*, 2008 WL 4612856, *1-*2 (E.D. Pa.), stated:

> It is well settled that the Court has the inherent authority to control the disposition of cases on its own docket. *See In Re Plastics Additives Antitrust Litigation,* 2004 WL 2743591 *5 (E.D.Pa. November 29, 2004).
>
>> [T]he Supreme Court said "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." The Court emphasized the need to adapt judicial processes to varying conditions, and said that in cases of exceptional public interest, individual litigants might be required to "submit to delay not immoderate in extent and not oppressive in its consequences."
>
> *Cheyney State College Faculty, et al. v. Hufstedler, et al.,* 703 F.2d 732, 737-738 (3d Cir.1983) ( *quoting Landis v. North American Company,* 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-166, 81 L.Ed. 163 (1936)). "[T]he decision whether to grant a stay must be made on a case-by-case basis". *In Re Plastics Additives Antitrust Litigation,* 2004 WL 2743591 at

14

*5. In determining whether a stay is appropriate, the Court looks at five competing interests:

(1) interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;

(2) burden which any particular aspect of the proceedings may impose on defendants;

(3) convenience of the court in the management of its cases, and the efficient use of judicial resources;

(4) interests of persons not parties to the civil litigation; and

(5) interest of the public in the pending civil and criminal litigation. *Id.*

*See also Moriarity v. Johnson*, Civil No. 08-1532, M.D. Pa. August 23, 2010 Order.

In the present civil rights action, Civil No. 11-1451, Plaintiff Miss. Miller seeks the Court to stay two Orders issued by the Bankruptcy Court in her Chapter 7 bankruptcy case, including the Order granting Defendant Veith, the owner of the real property on which her mobile home is located, relief from the automatic stay to evict her. Even if Plaintiff Miss. Miller's Motion for a Stay was properly filed in the present case, we do not find that any of the above stated five factors weigh in favor of the District Court granting Plaintiff Miss. Miller a stay in her Bankruptcy case. More importantly, we find that Plaintiff Miss. Miller must properly file an appeal with respect to the two challenged Orders of the Bankruptcy Court. 28 U.S.C. §158(a) and §158(d); *In re Anthanassious*, 418 Fed.Appx. at 94. Plaintiff Miss. Miller should not be allowed to circumvent the appeal process with respect to final orders of the Bankruptcy Court.

Thus, we will recommend that Plaintiff Miss. Miller's Motion for Stay Pending Appeal **(Doc. 6)** be denied.

15

**IV. Screening Plaintiffs' Complaint.**

As stated, Plaintiffs filed a Motion to proceed *in forma pauperis*. (Doc. 2).   We will recommend that the Court grant Plaintiffs' Motion to proceed *in forma pauperis*. (Doc. 2).  We now screen Plaintiffs' lengthy pleading as we are obliged to do.   *See Dunbar v. Dunbar*, Civil No. 11-0135, M.D. Pa.  On February 11, 2011, the Court in *Dunbar* issued an Order and granted Plaintiff's *in forma pauperis* motion  (Doc. 3, *Dunbar*).  The *Dunbar* Court then stated:

> The proper procedure after a district court grants *in forma pauperis* status is to file the complaint and then "screen it" before service pursuant to 28 U.S.C. § 1915(e)(2)(B).  <u>Fisher v. Miller</u>, 373 Fed. App'x 148, 148 (3d Cir.  2010) (citing <u>Oates v. Sobolevitch</u>, 914 F.2d 428, 429 n.1 (3d Cir.  1990)).  'The District Court may dismiss the complaint if, *inter alia*, it fails to state a claim upon which relief can be granted."  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii); <u>Fisher,</u> Fed App'x at 148.  If the Court finds that the Complaint fails to state a claim upon which relief can be granted, the Court must grant Plaintiff leave to amend the Complaint unless "amendment would be inequitable or futile."  <u>Grayson v. May view State Hosp.,</u> 293 F.3d 103, 106 (3d Cir.  2002) (citing <u>Shane v. Fauver,</u> 213 F.3d 113, 116-17 (3d Circ. 2000)); <u>see also</u> <u>Fisher</u>, 373 Fed. App'x at 149-50.

(Doc. 3, pp. 1-2, *Dunbar*).

Thus, we are obliged to screen Plaintiffs' Complaint  under 28 U.S.C. §1915(e).  Despite the fact that Plaintiffs are not inmates and are not complaining about prison conditions, § 1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners.  *See Grayson v. Mayview State Hosp.*, 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino,* Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4; *Palencar v. Cobler Realty Advisors*, Civil No. 09-0325, M.D. Pa., 7-24-09 slip op. pp. 5-6.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**V.  Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344,  (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal, ---* U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
> *Fowler,* 578 F.3d at 210-11.

17

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## VI.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").

"In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*   Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *See Rode,* 845 F.2d at 1208.

**VII.  Discussion.**

*1.  Statute of Limitations*

There is a 2-year statute of limitations with respect to a civil rights action filed in Pennsylvania.  *See Rodriguez-Perez v. Clark*, 2010 WL 2219413 (M.D. Pa. 2-11-10) adopted by 2010 WL 2219410 (M.D. Pa. 5-28-10) appeal dismissed by 423 Fed. Appx. 118 (3d Cir. 4-13-11).

The law is clear that civil rights claims in Pennsylvania are subject to a two-year statute of limitations.  *See Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6; *Mattis v. Dohman*, 260 Fed. Appx. 458, 461, n. 3(citations omitted); *Barnett v. York County*, Civil No. 11-0906, M.D. Pa. (July 14, 2011).

Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994); *Beattie, supra.*; *Ricketts v. AW of UNICOR*, 2009 WL 2232467, *9 (M.D. Pa.).

We find that, in screening Plaintiffs' Complaint, the Court can *sua sponte* dismiss Plaintiffs' stated claim that on August 6, 2009, Defendant YCAAA illegally and without probable cause entered their home in Windsor, Pennsylvania, and forcibly had Mrs. Miller removed and taken to York Hospital without her consent for a 25-day involuntary commitment.  (Doc. 1, pp. 10-11). As stated, Plaintiffs filed their Complaint on August 8, 2011, two days after the statute of limitations ran on this claim.  Thus, Plaintiffs' allegations make clear that the stated August 6, 2009 claim is time barred by the applicable two-year statute of limitations.  *See Rodriguez-Perez v. Clark*, 2010 WL 2219413; *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10); *Smith v. Delaware County Court*, 260 Fed. Appx. 454 (3d Cir. 2008); *Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order)(in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his allegations make clear that Plaintiff did not exhaust his administrative remedies even though exhaustion is an affirmative defense); *Barnett v. York County, supra* (in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's untimely civil right claims since his allegations make clear that Plaintiff did not file claims within 2-year statute of limitations).

Thus, based on the above cited cases, even though the statute of limitations is an affirmative defense, *sua sponte* dismissal of Plaintiffs' August 6, 2009 claims against Defendant YCAAA is

appropriate as they are clearly time barred.  Plaintiffs certainly were well aware of their August 6, 2009 claims on that date.  Dismissal of Plaintiffs' stated August 6, 2009 claims is proper since their failure to timely file their stated claims is abundantly clear from the face of their Complaint. Therefore, we will recommend that Plaintiffs' claims regarding Defendant YCAAA's forcible removal of Mrs. Miller from her house, which occurred on August 6, 2009, be dismissed with prejudice since they are clearly time barred.[7]

### 2. Not State Actors

Plaintiffs name various individual Defendants and entities which are not state actors or agencies.  Specifically, the following Defendants are not state actors or agencies:  Attorney Konkel; Neighborhood Services of Lancaster, Inc.; Colonial Manor Nursing & Rehabilitation; Phillip Veith; and Lancaster Red Rose Credit Union.[8]  Since the stated five Defendants are not state actors and

---

[7]Since Plaintiffs' August 6, 2009 claims against Defendant YCAAA are time barred, we recommend that these claims against the stated Defendant be dismissed with prejudice based on futility of any amendment.

[8]We also find that venue over all of Plaintiffs' claims against Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union is more appropriate in the Eastern District of Pennsylvania. *See Fattah v. Doe*, Civil No. 10-1607, M.D. Pa. (Court held that venue in the Middle District of Pennsylvania was not proper with respect to Plaintiff's constitutional claims against South Carolina care facility). The Middle District of Pennsylvania does not have sufficient connection with Plaintiffs' claims against Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union.  We find that venue with respect to Plaintiffs' constitutional claims against Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union does not properly lie with this Court, and that these claims should be dismissed without prejudice to Plaintiffs to file an action in the District Court for the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1391(b).  *See also Holley v. Robinson*, 2010 WL 1837797 (M.D. Pa.).

Accordingly, all of Plaintiff's constitutional claims against Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union should be dismissed without prejudice to Plaintiffs filing them in the United States District Court for the Eastern District of Pennsylvania. *See Joyner v. BOP*, 2005 WL 3088371 (M.D. Pa.); *Michtavi v. Miner*, Civil No.

state agencies with respect to Plaintiffs' allegations, Plaintiffs' constitutional claims against them under §1983 fail as a matter or law.  Also, Plaintiffs' conclusory allegation that the stated Defendants are state actors and state agencies is not sufficient.

Recently, in *Brookhart v. Rohr*, 385 Fed. Appx. 67, 69 (3d Cir. 2010)(Per Curiam), the Court stated that a complaint must contain:

> "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

*See also  Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), *Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009); *Hollingsworth v. Range Resources-Appalachia, LLC*, Civil No. 09-0838, M.D. Pa., 10-28-09 Memorandum, slip op. pp. 4-5(Plaintiff must "describe 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' each necessary elements of the claims alleged in the complaints.")(citations omitted); *Santiago v. Warminster Tp.*, 629 F.3d 121, 133 (3d Cir.  2010).

In *Santiago v. Warminster Tp.*, 629 F.3d 121, 133 (3d Cir. 2010), the Court stated that "'possibility' is no longer the touchstone for pleading sufficiency after *Twombly* and *Iqbal*. Plausibility is what matters.  Allegations that are 'merely consistent with a defendant's liability' or

---

07-0628, M.D. Pa.; *Aponte v. Cheponis*, Civil No. 10-0003, M.D. Pa.  Alternatively, we find that all of Plaintiffs' constitutional claims against Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union should be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a).  *See Holley, supra.*; *Fattah, supra.*

show the 'mere possibility of misconduct' are not enough. *Iqbal,* 129 S.Ct. at 1949–50 (internal quotation marks omitted)."

In *Brookhart*, the Third Circuit also stated:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Here, the majority of the defendants are private citizens and not state actors. Liability would attach if a private party conspired with a state actor, *Dennis v. Sparks,* 449 U.S. 24, 27-28, 101 S.Ct. 183, 66 L.Ed.2d 185, ... .

385 Fed. Appx. at 69.

Further, insofar as Plaintiffs are alleging that Defendant Colonial Manor Nursing & Rehabilitation violated their constitutional rights by subjecting Mrs. Miller to inhumane treatment, denying her basic hygiene, and restricting Miss. Miller's visitation, we will recommend that all of Plaintiffs' claims under §1983 be dismissed as against Defendant Colonial Manor since this Defendant is not a state agency.   Also, Defendants Neighborhood Services of Lancaster, Inc. and Lancaster Red Rose Credit Union are not state agencies.   Plaintiffs aver that Defendant Neighborhood Services of Lancaster, Inc., was appointed by the Court of Common Pleas as guardian over Mrs. Miller's personal and real property, including her house in Lancaster, Pennsylvania.  Plaintiffs allege that Defendant Lancaster Red Rose Credit Union held the mortgage on Mrs. Miller's house located in Lancaster, Pennsylvania, and that they had accounts with this Credit Union.[9]

------

[9]As noted, the proper venue with respect to Plaintiffs' claims against Defendants located in Lancaster, Pennsylvania, and concerning events which occurred in Lancaster, Pennsylvania, is the Eastern District of Pennsylvania.

Plaintiffs allege that Defendant Lancaster Red Rose Credit Union improperly initiated a mortgage foreclosure proceeding in March 2010 against their home in Lancaster, Pennsylvania, and that it violated their due process rights as well as rights under Pennsylvania law.

Plaintiffs state that Defendant Phillip Veith is the owner of the trailer park in York County where Miss. Miller's mobile home is located.  Plaintiffs allege that in November 2009, Defendant Veith initiated eviction proceedings against them without due process and without following proper Pennsylvania Landlord Tenant law.  (Doc. 1, p. 15).

Defendant Attorney Konkel was appointed by the York County Court on August 27, 2009, as Attorney for Mrs. Miller with respect to the Petition for involuntary commitment of Mrs. Miller.

The stated five Defendants, including Defendant Lancaster Red Rose Credit Union, which was the the holder of mortgage loan on Mrs. Miller's Lancaster house, are private corporations and private persons.  As such, they are not  proper Defendants under § 1983.  *See Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, * 1 (M.D. Pa.) (A private company is not an appropriate defendant in a § 1983 civil rights action because it is not acting under color of state law.)(citations omitted); *Jacobowitz v. M&T Mortgage Corporation*, *372* Fed. Appx. at 227 (M&T Mortgage Corporation was not a state agency).  We will recommend that Plaintiffs' claims be dismissed as against the stated five Defendants since these Defendants are not state agencies and state actors. *See Klein v. U.S. Bank, N.A.*, Civil No. 10-1690 (M.D. Pa.) (12-3-10 Order);*Brodeur v. Wells Fargo Bank, N.A.*, Civil No. 10-2452, M.D. Pa.; *Keisling v. Renn*, 2010 WL 3984876, *12, n. 2 (M.D. Pa. 9-7-10)(Court noted that even if the Plaintiff's claims involving a state court mortgage foreclosure action filed against him by Defendants National City Mortgage and PNC Bank were not barred by

the *Rooker-Feldman* doctrine, and the Court found that they were, Plaintiff's §1983 claims against these two Defendants were not cognizable since they did not act under color of state law) adopted by 2010 WL 3984813 (M.D. Pa. 10-12-10) affirmed by 2011 WL 1632955, 425 Fed.Appx. 106 (3d Cir. 5-2-11).

Further, as mentioned, we find that Plaintiffs' Complaint does not sufficiently allege that these five Defendants, Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union, were acting under color of state law with respect to their alleged conduct, including the mortgage foreclosure action Defendant Lancaster Red Rose Credit Union instituted against Plaintiff in Lancaster County Court, and the eviction action Defendant Veith instituted against Plaintiffs and their mobile home. Plaintiffs' conclusory allegations that said Defendants were state actors and agencies are clearly not sufficient under *Twombly* and *Iqbal*.

Thus, we will recommend that Plaintiffs' Complaint be dismissed as against Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union to the extent it raises civil rights claims against them under §1983. *See Keisling v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11)(Third Circuit Court found that Plaintiff's Complaint against Defendants who filed the state court foreclosure action against him, National City Mortgage, PNC Bank as well as their attorneys, were not properly alleged to have acted under color of state law) citing *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)("merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge").

Further, with respect to Defendant Attorney Konkel, "[c]ourt appointed counsel, especially one serving as a guardian ad litem, does not qualify as a state actor for purposes of §1983." *Goodson v. Maggi*, 2011 WL 2533286, * 13 (W.D. Pa. 6-23-11)(citations omitted).

Additionally, the Court in *Goodson v. Maggi*, 2011 WL 2533286, * 13, stated:

> Although § 1983 liability will not generally lie against a private party, liability may attach where the private party "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Hence, private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. *Id.* at 27–29, 101 S.Ct. 183. The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. *Id.* (action against private parties accused of conspiring with judge found to be state action under § 1983). The allegations of a complaint, however, must state a claim for conspiracy. *See id.* at 28, 101 S.Ct. 183.
>
> In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola,* 860 F.Supp. 223, 225 (E.D.Pa.1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Further, in light of *Twombly* and its progeny, there must be " 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' " *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir.2010) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

We find that Plaintiffs have failed to allege a cognizable conspiracy claim with sufficient particularity as required under *Twombly*.  As stated, Plaintiffs raise a vague conspiracy claim under §1983 in Count IX of their Complaint.  The allegations of Plaintiffs' Complaint make clear that

there was simply no connection between the alleged conduct of Defendants.  Plaintiffs have failed to "allege any facts that plausibly suggest a meeting of the minds" between Defendants to keep Mrs. Miller committed at Colonial Manor, to find that Mrs. Miller was not capable of taking care of herself, to not allow Mrs. Miller to live any longer with Miss. Miller, and to deprive them of their property.  Additionally, there is simply no connection between the mortgage foreclosure action instituted against Mrs. Miller's house in Lancaster and the eviction action Defendant Veith commenced against Miss. Miller in York County with respect to her mobile home.  Plaintiffs' "bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted."  *Id.* citing *Mincy v. Klem*, 2009 WL 331432, *5 (M.D. Pa. 2-9-09).

Therefore, we will recommend that Plaintiffs' §1983 conspiracy claims raised in Count IX of their Complaint be dismissed as against all Defendants.

Thus, Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union can only be held liable in this case under § 1985(3) if they conspired with a state actor.  *See Keisling v. Renn*, 2010 WL 3984876, *9 citing, in part, *Abbott v. Latshaw*, 164 F. 3d 141, 147-48 (3d Cir. 1998)("[A] private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of §1983."); *Goodson v. Maggi*, 2011 WL 2533286, * 14.  As mentioned, Plaintiffs raise claims under §1985.

*3. No Section 1985(3) Conspiracy Claim is stated against Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union*

As in *Brookhart*, which is on point with the present case, we do not find that Plaintiff has properly alleged Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union were part of a conspiracy under §1985(3) with state actors to deprive them of their constitutional rights.  As mentioned, Plaintiffs assert claims under §1985(3) against Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union (Count III).

The *Brookhart* Court stated:

> Section 1985(3) of title 42 requires a plaintiff to allege that invidious racial or otherwise class-based discriminatory animus lay behind the defendants' actions, and he must set forth facts from which a conspiratorial agreement between the defendants can be inferred. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Brookhart did not allege that he was a member of a protected class, and his conclusory allegations of a deprivation of his constitutional rights are insufficient to state a section 1985(3) claim.

385 Fed. Appx. at 70.

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C. § 1985(3) are set forth in a line of Supreme Court cases beginning with the decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There, the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798. The Court strictly construed the requirement of class-based invidious animus in *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding

that commercial and economic animus could not form the basis for a section 1985(3) claim. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997). Consistent with these decisions, a plaintiff must allege the following elements in order to state a claim pursuant to 42 U.S.C. § 1985(3):

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3). Instead, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v. Marrow*, 2009 WL 3103781, *6 citing *Majewski v. Luzerne County*, 2007 WL 1074769 (M.D. Pa. 4-9-07); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted).

Plaintiffs fail to state that they fall within a class entitled to protection afforded by §1985(3). Additionally, Plaintiffs do not state that the alleged conspiracy involving Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union "was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006). Further, as stated above, in *Keisling v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11), the Third Circuit Court found that Plaintiff's Complaint against Defendants who filed the state court foreclosure action against him, including National City Mortgage, PNC Bank as well as their attorneys, were not properly alleged to have

acted under color of state law, and the Court cited to *Dennis v. Sparks*, 449 U.S. 24, 28 (1980), and quoted *Dennis* by stating, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."

Additionally, "mere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim." *Goodson v. Maggi*, 2011 WL 2533286, * 14 quoting *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d cir. 1992).  As discussed, we find that Plaintiffs have failed to allege any facts that show the numerous unconnected Defendants entered into any agreement to deprive them of their constitutional rights, and that they have failed to allege any facts to indicate conduct taken as part of an agreement or plan.

Thus, we will recommend that all of Plaintiffs' claims under §1983 and §1985(3) against Defendants Attorney Konkel, Neighborhood Services of Lancaster, Inc., Colonial Manor Nursing & Rehabilitation, Phillip Veith, and Lancaster Red Rose Credit Union be dismissed with prejudice. *See Brookhart, supra*.; *Killing v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11).  Based on the above, we will also recommend that Plaintiffs' §1985(3) claims against Defendants York County, YCHSD, YCAAA, Mackereth, Benaknin, Gordon, and Andreuzzi also be dismissed, and that Count III of the Complaint be dismissed entirely.

4. *Defendant York County Court of Common Pleas*

Moreover, we find that Plaintiffs' claims against Defendant York County Court of Common Pleas are barred under the Eleventh Amendment.  Defendant York County Court of Common Pleas falls under the Unified Judicial System of Pennsylvania pursuant to 42 Pa.C.S.A. §301(4). *See*

30

*Dougherty v. Snyder*, 2011 WL 1871226, * 13.

In *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 694-695 (W.D. Pa. 2009), the Court stated:

> A state is deemed to be the real party in interest when a lawsuit is brought against an agency that is considered to be an "arm" of the state. See *Regents of Univ. Of Cal. v. Doe,* 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *Benn,* 426 F.3d at 241. The United States Court of Appeals for the Third Circuit has recognized that "[t]he Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [unified judicial system] are part of the Commonwealth government rather than local entities." *Haybarger,* 551 F.3d at 198 (3d Cir.2008) (citing *Benn,* 426 F.3d at 240-41 and Pa. Const. art. V, § 1). The Court of Appeals has also found that "Pennsylvania's judicial districts ... are entitled to Eleventh Amendment immunity." *Id.* Moreover, "all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes." *Callahan v. City of Philadelphia,* 207 F.3d 668, 674 (3d Cir.2000).

We find that Plaintiffs cannot proceed with respect to their claims against Defendant York County Court of Common Pleas since they are barred under the Eleventh Amendment.  Based on *MCI Telecom. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001), because Defendant York County Court of Common Pleas is an agency of the Commonwealth of Pennsylvania, this Court's jurisdiction over this Defendant is barred by the Eleventh Amendment of the United States Constitution, and all claims against it are subject to dismissal.

In *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009), this Court held that:

> The Eleventh Amendment precludes private federal litigation against a state and its agencies. n16 *Hans v. Louisiana*, 134 U.S. 1, 15-16, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194-95 (3d Cir. 2008). This is a jurisdictional bar subject to only

> two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).   Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. See 42 PA. CONS. STAT. § 8521(b); *see also Lombardo*, 540 F.3d at 196 n.3; *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

*See also Urella v. PA State Troopers Ass'n*, 2008 WL 1944069, *3.

Thus, we find that Plaintiff's claims against Defendant York County Court of Common Pleas are barred by the Eleventh Amendment and that it is not a "person" under §1983.  *See Democracy Rising PA v. Celluci*, *supra*; *Beattie  v. DOC SCI-Mahanoy*, *supra*; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 694-695 (W.D. Pa. 2009).

Accordingly, we will recommend that Defendant York County Court of Common Pleas be dismissed with prejudice.  *See Malik v. Conboy*, 2006 WL 3511686, *2 (E.D. Pa. 12-5-06).

5.  *Rooker-Feldman doctrine*

We also find that Plaintiffs' action raising constitutional claims  is entirely barred under the *Rooker-Feldman* doctrine, as well under the doctrine of claim preclusion.  Moreover, as stated, Defendant Konkel, court appointed attorney for Mrs. Miller with respect to the Petition to have her involuntarily committed, is not a state actor for purposes of §1983.[10]

---

[10]We note that since Defendant Attorney Konkel was appointed by the York County Court, he would be entitled to quasi judicial immunity if he acted pursuant to the Court's directives in Plaintiff Mrs. Miller's commitment case.  In *Clayton v. Children's Choice*, 2010 WL 3282979, *6 (E.D. Pa. 8-18-10), the Court stated:

> Absolute judicial immunity extends to officials who perform quasi-

In *Goodson v. Maggi*, 2011 WL 2533286, * 7, the Court stated:

> [The Third Circuit Court of Appeals has] established the following test, based on the Supreme Court's holding in *Exxon Mobil:*
> [T]here are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

> *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir.2010) (quoting *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517). Furthermore, in formulating the four-part test, the court of appeals determined that the phrase "inextricably intertwined" neither created an additional legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id.* at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1141 (10th Cir.2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*." *Id.* at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir.2005)).

---

> judicial functions or who act pursuant to a judge's instructions. *See Forrester v. White,* 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (extending judicial immunity to officials "who perform quasi-judicial functions"); *McArdle v. Tronetti,* 961 F.2d 1083, 1085 (3d Cir.1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects" the judge); *Dellenbach v. Letsinger,* 889 F.2d 755, 763 (7th Cir.1989) (holding that "court personnel are entitled to absolute quasi-judicial immunity for their alleged acts ... pursuant to the judge's instructions."). In § 1983 actions relating to custody proceedings, this quasi-judicial immunity has been extended to guardians *ad litem, Dornheim v. Sholes,* 430 F.3d 919, 925 (8th Cir.2005), and child custody conference officers. *Logan v. Lillie,* 728 A.2d 995 (Pa.Commw.1999), *appeal withdrawn,* 559 Pa. 708, 740 A.2d 235 (1999).

The court of appeals in *Great Western* found that the key to determining whether *Rooker–Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement—plaintiff must complain of injuries caused by the state court judgment—is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir.2006)).

The *Goodson* Court also stated:

The fourth requirement of the four-part test—that the plaintiff must invite federal court review and rejection of the state court judgment—is closely related to the second requirement. *Id.* at 168 (quoting *Bolden,* 441 F.3d at 1143). The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff.

*Id.* at *8.

Plaintiffs challenge, in part, state court decisions with respect to the mortgage foreclosure action filed against Mrs. Miller's Lancaster, Pennsylvania house, an ejectment action filed by Defendant Veith against Plaintiff Miss. Miller to evict her mobile home from his real property, as well as the decisions of the York County Court regarding the Petition to involuntarily commit Mrs. Miller and the Court's finding that she could no longer live with her daughter, Miss. Miller. Plaintiffs basically allege that the proper rules and procedures were not followed in the state court actions commenced against them, and that many of their constitutional rights were violated. As stated above, part of the injunctive relief Plaintiffs requests in the present case essentially seeks this Court to undo the York County Court's decisions and "to allow Mrs. Miller to be released from Colonial Manor." (*Id.*, p. 46). This relief, as discussed below, would require this Court to declare the decisions of the York County Court to commit Mrs. Miller at Colonial Manor and decisions that Mrs. Miller was incapacitated null and void, and would effectively overrule the York County Court's

34

judgments.  The York County Court decisions regarding the involuntary commitment of Mrs. Miller

and the decision regarding her care (including the removal of Miss. Miller as her caretaker) would

have to be rejected and overruled for Plaintiffs to prevail on this requested relief.   Also, as

mentioned, in her recent letter to the undersigned, Doc. 7, Plaintiff Miss. Miller states that in the

instant case she is "asking for injunctive relief to avoid being evicted from my home."  Thus, this

relief would require this Court to effectively overrule the York County Court's decision allowing

Defendant Veith to evict Plaintiff Miss. Miller from his real property in Windsor, York County,

Pennsylvania, where her mobile home is located.

Thus, we find that this Court lacks subject matter jurisdiction over all of Plaintiffs' claims

under the *Rooker-Feldman* doctrine.  *See Wager v. York County Domestic Relations*, 2010 WL

231129 (M.D. Pa. 1-14-10); *Bonham v. Givens*, 197 Fed.Appx. 148, 150 (3d Cir. 2006)(Per

Curiam)(Third Circuit agreed with M.D. Pa. District Court that case was barred under *Rooker-

Feldman* doctrine and found that Plaintiff's §1983 civil rights action challenging his involuntary

commitment by state court "effectively alleged injuries caused by state-court judgments authorizing

the continuation of his involuntary commitment, which invited district court review and rejection

of those judgments.") citing *Exxon Mobil*, 544 U.S. at 284. In *McKnight v. Baker*, 244 Fed. Appx. 442

(3d Cir. 2007), the Third Circuit considered an appeal filed by Mr. McKnight arising from a custody

dispute with the mother (Ms. Middleton) of their daughter.  The Philadelphia County Family Court

issued a custody and visitation  order granting the mother primary custody over Plaintiff's and Ms.

Middleton's daughter.  The Family Court also suspended Plaintiff's visitation rights for failing to

abide by an order.  The District Court dismissed most of Plaintiff's claims pursuant to the *Rooker-

Feldman* doctrine.  *See McKnight v. Baker*, 343 F. Supp. 2d 422 (E.D. Pa. 2004), affirmed, 244

Fed.Appx. 442 (3d Cir. 2007).

In *McKnight*, 244 Fed. Appx. at 444-45, the Third Circuit stated:

> With reference to the *Rooker-Feldman* doctrine, district courts do not have jurisdiction over cases brought by a "state-court loser [ ] complaining of injuries caused by [a] state-court judgment[ ] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment[ ]." *Exxon Mobil Corp.,* 544 U.S. at 284, 125 S.Ct. 1517. Despite McKnight's argument to the contrary, it is abundantly clear that the crux of his complaint is that Middleton and others conspired to have the Family Court suspend his visitation rights and have subsequently acted in accordance with that Family Court order. It is hard to imagine a case which more directly asks a district court to review the actions of a state court. In order for McKnight to prevail, the District Court would need to  conclude that the Family Court erred in its suspension of McKnight's visitation rights, or that the various defendants have violated his constitutional rights in adhering to the dictates of that order. The District Court does not have jurisdiction to so conclude. *See, e.g., Marran v. Marran*, 376 F.3d 143, 151-53 (3d Cir.2004); *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 727-29 (7th Cir.1993) ("[C]arrying out a judicial decision does not independently violate the Constitution.").

As in *McKnight* and *Bonham*, we find that our Plaintiffs are clearly seeking this District Court to review and overturn the decisions of the York County Court, as well as YCHSD and YCAAA, regarding the decisions that Mrs. Miller was incapacitated and that Miss. Miller could no longer provide her care. Plaintiffs seek this Court to find that Defendants violated their rights with respect to the decisions of the York County Court as well as YCHSD and YCAAA and their staff.  Plaintiffs admit that the commitment of Mrs. Miller was found by the York County Court to be appropriate and was found by the state court to be authorized by law.  We find that based on *Bonham, McKnight* and *Wager*, it is abundantly clear that this Court does not have jurisdiction over Plaintiffs' action.  *See also Johnson v. DeGrandy,* 512 U.S. 997, 1005-1006 (1994)("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in

a United States district court, based on the losing party's claim that the state judgement itself

violates the loser's federal rights."); *McFall v. Register of Wills for Bucks County, PA*, 352 F. Supp.

2d 544, 547 (E.D. Pa. 2004).

In *Wager v. York County Domestic Relations*, 2010 WL 231129, *5, the Court stated:

> It has been consistently recognized that the *Rooker-Feldman* doctrine prevents
> federal judges from considering civil rights lawsuits which seek to re-examine
> state domestic relations court rulings that are presented "by state-court
> losers complaining of injuries caused by state-court judgments rendered
> before the district court proceedings commenced." *Kwasnik v. Leblon,* 228
> F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have
> typically deferred to the state court domestic relations decisions, and rebuffed
> efforts to use federal civil rights laws to review, or reverse, those state court
> rulings. *See, e.g., Marran v. Marran,* 376 F.3d 143 (3d. Cir.2004); *Kwasnik*
> 228 F. App'x 238, 242; *Smith v. Department of Human Services,* 198 F.
> App'x 227 (3d Cir.2006); *Rose v. County of York,* No. 05-5820, 2007
> WL 136682 (E.D.Pa. Jan.12, 2007).  These settled principles are directly
> applicable here and are fatal to Wager's claims. Granting even the
> most liberal reading to Wager's complaint, that complaint directly invites
> this Court to set aside decisions rendered in state court in a longstanding
> domestic relations case. Thus, Wager's complaint specifically invites us to
> do precisely that which we are forbidden under the *Rooker-Feldman*
> doctrine from doing: entertain a "case[ ] brought by state-court losers
> complaining of injuries caused by state-court judgments rendered before
> the district court proceedings commenced and inviting [this] court
> review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi
> Basic Industries Corp.,* 544 U.S. at 284. Therefore, this Court should
> decline Wager's invitation and dismiss this complaint for lack of
> jurisdiction.

*See also Van Tassel v. Lawrence County Domestic Relations Sections*, 390 Fed. Appx. 201 (3d Cir.

2010).

In *Gaynor v. Nelowet*, 2000 WL 427274, *1 (E.D. Pa. 4-19-00), the Court stated:

> The *Rooker-Feldman* doctrine,FN13 under which federal district courts
> are not permitted to exercise judicial review over state court proceedings.
> "District courts lack subject matter jurisdiction once a state court has adjudicated
> an issue because Congress has conferred only original jurisdiction not

37

appellate jurisdiction on the district courts." *Guarino v. Larsen,* 11 F.3d 1151, 1156-57 (3d Cir.1993); *see also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 24, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("It is a well-settled principle that federal appellate review of judgments rendered by state courts can only occur in this Court, on appeal or by writ of certiorari."). A federal proceeding is barred under the *Rooker-Feldman* doctrine "when entertaining the federal court claim would be the equivalent of an appellate review of [the state court] order." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). *Rooker-Feldman* applies to final state court judgments, *Port Authority Police Benevolent Ass'n v. Port Authority,* 973 F.2d 169, 177 (3d Cir.1992), including those of lower state courts. *Id.* ("[F]ederal district courts are certainly ... precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system.").

In the present case, we find that Plaintiffs' constitutional claims are "inextricably intertwined" with issues adjudicated by a state court since this Court would have to determine that the York County Court's decisions and orders regarding the commitment and care of Plaintiff Mrs. Miller and, regarding the eviction of Plaintiff Miss. Miller's mobile home, were erroneously entered in order to grant Plaintiffs relief with respect to their instant claims. We find that Plaintiffs' constitutional claims are not independent of the merits of the York County Court's decisions and orders. Thus, we find that a decision with respect to Plaintiffs' present federal claims by this Court requires a determination that the York County Court's decisions and orders were erroneous, and that a decision by this Court would render the York County Court's decisions and orders as ineffectual. Indeed, any relief to which Plaintiffs may be entitled in this case with respect to their instant claims would be largely based on findings that the York County Court's decisions and orders entered in Mrs. Miller's involuntary commitment case and in the eviction case with respect to Plaintiff Miss. Miller's mobile home were issued in violation of their constitutional rights. *See Gaynor, supra*; *Goodson, supra.*

38

The York County Court ruled against Plaintiffs, and they were the losing parties in the involuntary commitment action regarding Mrs. Miller and in the action as to Miss. Miller's inability to continue to care for her mother.   The York County Court also found that Mrs. Miller was incapacitated and that her living arrangements with her daughter, Miss. Miller, were not appropriate for her.   The York County Court had Mrs. Miller removed from the care of her daughter, Miss. Miller.   We also find that the source of Plaintiffs' alleged injures in this case is the state court decisions taking Mrs. Miller out of Miss. Miller's care and placing Mrs. Miller in a nursing facility from August 2009 through the present day.   As mentioned, Plaintiffs seek, in part, for this Court to allow Mrs. Miller to leave the Colonial Manor Nursing Home where she was placed by the state court.   Plaintiff Miss. Miller also seeks this Court to undo the decisions of the York County Court evicting her mobile home from Defendant Veith's property.   Thus, Plaintiffs are clearly seeking reversal of the York County Court decisions and judgments. *See Goodson*, 2011 WL 2533286, *11; *Bonham*, *supra*.   As in *Goodson* and *Bonham*, we find that our Plaintiffs are, "in essence, seeking appellate review of the state court judgment, and therefore, [we find] that the source of Plaintiff[s'] alleged injures as to these claims seeking equitable relief is the state court judgment issued in [York] County." *Id*.

We also find that the third requirement of *Great Western* is met since it is clear that the York County Court decisions regarding Mrs. Miller's commitment and care were entered prior to the present case being commenced.   (Doc. 1, pp. 14-18).   In fact, Plaintiffs state that the York County Court issued its final Decree and Order, in which it adjudicated Mrs. Miller as an incapacitated person and committed her to the Defendant nursing home where she currently resides, on July 21, 2010.   Further, we find that York County Court decisions allowing the eviction of Plaintiff Miss.

Miller's mobile home from Defendant Veith's property were entered prior to the commencement of the instant case since part of the injunctive relief sought in this case is to prevent Plaintiff Miss. Miller's eviction.

As to the fourth requirement of *Great Western*, as discussed, we find that the relief Plaintiffs request, in part, could only be granted if their rights were violated by the stated York County Court's decisions and orders.  If this Court ordered Mrs. Miller's release from Defendant nursing home as Plaintiffs seek, this injunction would bar enforcement of the York County Court's decisions, and would effectively reverse the York County Court's final judgment of July 21, 2010.  Additionally, if this Court granted the relief sought and ordered that Miss. Miller's eviction be stopped, this injunction would bar enforcement of the York County Court's decisions.

Thus, we will recommend that all of Plaintiffs' constitutional claims raised in their Complaint be dismissed based on the *Rooker-Feldman* doctrine since the Court lacks subject matter jurisdiction to review these claims, which are inextricably intertwined with the York County Court's decisions and orders.  *See McKnight, supra; Roush v. Horner*, 2008 WL 189556, *5-*7 (W.D. Pa. 1-18-08); *Goodson, supra; Bonham, supra*.

Additionally, Plaintiffs' remedy with respect to their challenge to the York County Court's final orders regarding all matters pertaining to the commitment of Mrs. Miller and her care, and with respect to the York County Court's final orders regarding  the eviction of Miss. Miller, was to file appeals with the Pennsylvania appellate courts.  *See McKnight v. Baker*, 343 F. Supp. 2d at 425, citing *Parkview Assoc. Partnership v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000); *Malik*, 2006 WL 3511686, *3.

Plaintiffs' claims against Defendant Lancaster Red Rose Credit Union and Defendant Veith regarding the mortgage foreclosure action and the eviction action, are also barred under the *Rooker-Feldman* doctrine.  Plaintiffs allege they were deprived of their property (Mrs. Miller's Lancaster house and Miss. Miller's York mobile home) without due process in violation of their Fourteenth Amendment rights.  As stated, Plaintiff Miss. Miller seeks as relief for this Court to prevent her eviction.  This Court is precluded by the *Rooker-Feldman* doctrine from vacating the state court's judgments and orders since this would have the effect of undoing the state court foreclosure and eviction actions.  *Hansford v. Bank of America*, 2008 WL 4078460, * 5; *Jacobowitz v. M&T Mortgage Corporation*, Civil No. 09-1332, M.D. Pa.; *Klein v. U.S. Bank, N.A.*, 2010 WL 703255, *7-*8; *Donaven v. Keuerleber,* 2009 WL 761195 (3-19-09 M.D. Pa.); *Keisling v. Renn*, 2010 WL 3984876, *11-*12.  We find that Plaintiff's present claims are "inextricably intertwined" with the York County Court's and the Lancaster County Court's (with respect to the mortgage foreclosure action) adjudications.  Thus, Plaintiffs' attack on the state court's orders regarding the state mortgage foreclosure action Defendant Lancaster Red Rose Credit Union  instituted against Mrs. Miller, and the eviction action Defendant Veith instituted against Miss. Miller and her mobile home, and any judgments entered against them, is barred by the *Rooker-Feldman* doctrine.  Under the *Rooker-Feldman* doctrine, this Court is precluded from exercising subject matter jurisdiction over Plaintiffs' present action.  *See Jacobowitz v. M&T Mortgage Corporation*, *supra.*; *Keisling v. Renn*, 2010 WL 3984876, *11-*12.

As the *Hansford* Court stated:

> This conclusion is supported by decisions of courts in this Circuit. The
> court of appeals has held that the *Rooker-Feldman* doctrine bars claims for
> rescission if such claims would have the effect of undoing a state court

foreclosure action. *See, e.g., Ayres-Fountain v. Eastern Savings Bank,* 153 F. App'x 91, 92 (3d Cir.2005) (holding that court lacked jurisdiction to resolve rescission claim because it was "inextricably intertwined" with state court default judgment in foreclosure); *Knapper,* 406 F.3d at 580 (holding that *Rooker-Feldman* doctrine applied to prevent bankruptcy court from exercising subject matter jurisdiction over adversary proceeding brought by Chapter 13 debtor to set aside state foreclosures and sheriff's sales); *see also In re Faust,* 353 B.R. 94 (E.D.Pa.2006) (following entry of judgment in lender's favor in state court mortgage foreclosure action, *Rooker-Feldman* doctrine barred rescission claim, but did not bar action to recoup money damages); *Stuart,* 367 B.R. at 549-50 (holding that under *Rooker-Feldman,* bankruptcy court lacked jurisdiction over rescission claim where mortgage was subject to foreclosure judgment in state court); *Cooley,* 365 B.R. at 470-73 (same); *Reagoso,* 2007 WL 1655376, at *2-3 (same).

2008 WL 4078460,* 5; *Laychock v. Wells Fargo Home Mortg.*, 2008 WL 2890962, * 2 - * 3 (E.D. Pa.); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 Fed. Appx. 149, 152-53) (3d Cir. 2008) ("to the extent that [plaintiff] seeks to 'appeal from' the state court's foreclosure judgment, the District Court correctly dismissed the claim under *Rooker-Feldman*.") (citation omitted); *Collazo v. Option One Mortg. Corp.*, 2009 WL 3856671 (11-16-09).  *See also Johnson v. DeGrandy,* 512 U.S. 997, 1005-1006 (1994)("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgement itself violates the loser's federal rights."); *Jacobowitz v. M&T Mortgage Corporation*, Civil No. 09-1332, M.D. Pa. 10-5-09, aff'd. 372 Fed. Appx. 225 (3d Cir. 3-24-10); *Klein v. U.S. Bank, N.A.*, 2010 WL 703255 (M.D. Pa. 2-25-10); *Klein v. U.S. Bank, N.A.*, Civil No. 10-1690 (M.D. Pa.) (12-3-10 Order).

In *Klein v. U.S. Bank, N.A.*, 2010 WL 703255, *7-*8 (M.D. Pa.), the Court stated:

The *Rooker-Feldman* doctrine embodies the principles set forth in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct.

1303, 75 L.Ed.2d 206 (1983). Section 1257 of Title 28 of the United States Code confers on the United States Supreme Court appellate jurisdiction to review final judgments of the states' highest courts. The *Rooker-Feldman* doctrine is the doctrine that, by negative implication, inferior federal courts lack subject matter jurisdiction to review final judgements of the states' highest courts. *E.B. v. Verniero,* 119 F.3d 1077, 1090 (3d Cir.1997). The *Rooker-Feldman* doctrine has been interpreted to also apply to final decisions of lower state courts. *Id.* "District courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction, not appellate jurisdiction, on the district courts." *In re Gen. Motors Corp. Products Liability Litigation,* 134 F.3d 133, 143 (3d Cir.1998). The existence of a state court judgment in another case bars a subsequent federal proceeding under *Rooker-Feldman* "when entertaining the federal court claim would be the equivalent of an appellate review of that order." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). "Under the *Rooker-Feldman* doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication." *Whiteford v. Reed,* 155 F.3d 671, 673-74 (3d Cir.1998). In other words:

*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. Accordingly, to determine whether *Rooker-Feldman* bars [a] federal suit requires determining exactly what the state court held ... If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.

*Whiteford, supra,* 155 F.3d at 674 (quoting *FOCUS, supra,* 75 F.3d at 849). Insofar as the plaintiff requests this court to vacate the order of the state court regarding the mortgage foreclosure judgment such relief is barred by the *Rooker-Feldman* Doctrine. The state court, in the mortgage foreclosure action filed against the plaintiff, had to have determined that defendant U.S. Bank's foreclosure on the plaintiff's home was valid. The plaintiff's request that this Court "stop the foreclosure" is in essence a request to vacate the determination of the state court and to render the state court's foreclosure judgment void. This Court is precluded by the *Rooker-Feldman* Doctrine from doing so.

*See also Reisinger*, 712 F. Supp. 2d at 348-49.

This Court is precluded by the *Rooker-Feldman* doctrine from vacating the state court's decisions since this would have the effect of undoing the foreclosure proceedings and eviction proceedings against Plaintiffs and their property. *Hansford v. Bank of America*, 2008 WL 4078460, * 5; *Jacobowitz v. M&T Mortgage Corporation*, Civil No. 09-1332, M.D. Pa.; *Klein v. U.S. Bank, N.A.*, 2010 WL 703255, *7-*8; *Reisinger*, 712 F. Supp. 2d at 348-49.

Additionally, Plaintiffs' attempt to relitigate the decisions regarding Mrs. Miller's involuntary commitment and care by the York County Court, as well as any decisions regarding the the York County Court mortgage foreclosure action and eviction action, is not permitted based on Pennsylvania's preclusion doctrine.  In *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F3d.Appx. 149, 153 (3d Cir. 2008), the Court stated:

> Federal courts are required to give state court  judgments the same preclusive effect that the issuing state courts would give them.  *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997).  Under Pennsylvania law, claim preclusion is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action.  Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.  [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action. *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 669 A2d. 309, 313 (1995) (internal citations omitted).

(footnote omitted).

As stated, Plaintiffs could have litigated, in the state courts, their present claims, and they could have challenged these decisions in the state courts. The Pennsylvania claim preclusion doctrine now prohibits such claims.  *See McKnight v. Baker*, 415 F.Supp. 2d 559, 562, n. 2 (E.D. Pa. 2006), affirmed, 244 Fed.Appx. 442 (3d Cir. 2007)(Court found Plaintiff's federal action

challenging the state Family Court's custody and visitation decisions was barred under the *Rooker-Feldman* doctrine and the doctrine of claims preclusion).

Moreover, as the Court in *Hansford v. Bank of America*, 2008 WL 4078460,*5-*6 (E. D. Pa.), stated:

> Claim preclusion, or *res judicata,* "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action ." *Williams v. City of Allentown,* 25 F.Supp.2d 599, 602 (E.D.Pa.1998) (*citing Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 189 (3d Cir.1993)). In order to successfully invoke claim preclusion, a party must show that there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984). "All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost." *Williams,* 25 F.Supp.2d at 602 ( *citing* 18 James Wm. Moore, et al., Moore's Federal Practice § 131.01 (3d ed.1998)).

Thus, insofar as Plaintiffs' federal claims challenge the York County Court's final decisions and orders regarding the commitment of Mrs. Miller and her care, and they challenge the state court decisions regarding the mortgage foreclosure action and eviction action, these claims are barred by Pennsylvania's preclusion doctrine since they are based on the same transactions that were at issue in the state court's case. *Id*.

### 6. *State Law Claims*

Since we find that Plaintiffs have not established a federal claim against any Defendant, we will recommend that the Court decline to exercise pendent jurisdiction over all of Plaintiffs' state law claims against Defendants, *i.e.* Count VII. *See Verdecchia v. Prozan*, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); *Grimm v. City of Uniontown*, 2008 WL 282344, *32 (W.D. Pa. 1-31-08).

Accordingly, we will recommend that Plaintiffs' *in forma pauperis* Motion (Doc. 2) be granted, and that all of Plaintiffs' claims in their Complaint (Doc. 1) against all Defendants be dismissed with prejudice.

## VIII.  Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiffs' *in forma pauperis* Motion **(Doc. 2)** be granted solely for the purpose of filing this action, and that Plaintiffs' Complaint **(Doc. 1)** as against all Defendants be dismissed with prejudice.[11]   It is also recommended that Plaintiff Miss. Miller's Motion for Stay Pending Appeal **(Doc. 6)** be denied.



                                           **s/ Thomas M. Blewitt**
                                           **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**

**Dated: October 21, 2011**

_____

[11] Based on our discussion above, we do not recommend that Plaintiffs be allowed to amend their pleading as to any Defendant since we find futility of any amendment.  *See Ashton v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WANDA D. MILLER (mother) and          :
WANDA D. MILLER (daughter),           :
                                      :          CIVIL ACTION NO. **1:CV-11-1451**
                                      :
          Plaintiffs                  :          (Chief Judge Kane)
                                      :
          v.                          :          (Magistrate Judge Blewitt)
                                      :
                                      :
YORK COUNTY, PA, et al.,              :
                                      :
                                      :

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 21, 2**011.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                     **s/ Thomas M. Blewitt**
                                                     **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated: October 21, 2**011